IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**THOMPSON PEARCY BURNSIDE,**

    **Plaintiff,**

vs.　　　　　　　　　　　　　　　　　　**CIVIL ACTION NO. 2:17-CV-01329**

**NANCY A. BERRYHILL,**
**ACTING COMMISSIONER OF**
**SOCIAL SECURITY,**

    **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Acting Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Order entered October 20, 2017 (Document No. 14.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are Plaintiff's Memorandum in Support of Judgment on the Pleadings and Defendant's Brief in Support of Defendant's Decision. (Document Nos. 12 and 13.)

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **GRANT** Plaintiff's request for judgment on the pleadings (Document No. 12.), **DENY** Defendant's request to affirm the decision of the Commissioner (Document No. 13.); **REVERSE** the final decision of the Commissioner; and **REMAND** this matter back to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings as explained *infra*.

**Procedural History**

The Plaintiff, Thompson Pearcy Burnside (hereinafter referred to as "Claimant"), protectively filed his application for Title II benefits on July 25, 2013 alleging disability since September 26, 2012 because of "motor vehicle accident on 1/21/2013, two heart attacks, concussion, back injury, hiatal hernia, gout, sleep apnea, high blood pressure, high cholesterol, and hypothyroidism."[1] (Tr. at 234.) His claim was initially denied on October 18, 2013 (Tr. at 91-101.) and again upon reconsideration on January 15, 2014. (Tr. at 103-109.) Thereafter, Claimant filed a written request for hearing on February 3, 2014. (Tr. at 110-111.)

An administrative hearing was held on September 4, 2015 before the Honorable Anthony Dziepak, Administrative Law Judge ("ALJ"). (Tr. at 23-61.) On December 2, 2015, the ALJ entered an unfavorable decision. (Tr. at 10-22.) On January 21, 2016, Claimant requested review of the ALJ's decision by the Appeals Council. (Tr. at 6-9.) The ALJ's decision became the Commissioner's final decision on December 19, 2016 when the Appeals Council denied Claimant's Request. (Tr. at 1-5.)

On February 21, 2017, Claimant timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (Document No. 2.) The Commissioner filed an Answer and a Transcript of the Administrative Proceedings. (Document Nos. 8 and 9.) Subsequently, Claimant filed a Memorandum in Support of Judgment on the Pleadings (Document No. 12.); in response, the Commissioner filed a Brief in Support of

---

[1] In his Disability Report – Appeal, submitted on November 7, 2013, Claimant alleged that he began to experience "pain in his back, abdomen, right elbow, heel and big toe; swelling in my feet and hands, fatigue; shortness of breath; occasional diarrhea and constipation; headaches;" and due to side effects of his medications, "grogginess, diarrhea, weakness, headaches, and drowsiness; short term memory loss; and lack of concentration." (Tr. at 265.) The worsening of these symptoms have caused him more physical and mental limitations. (Tr. at 265-266.)

2

Defendant's Decision. (Document No. 13.) Consequently, this matter is fully briefed and ready for resolution.

**Claimant's Background**

Claimant was 59 years old as of the date of the ALJ's decision, and during the relevant period defined as a "person closely approaching advanced age." See 20 C.F.R. § 404.1563(d). (Tr. at 33.) Claimant completed the eleventh grade and has an employment history that includes work as a driller's helper, parking lot attendant, dock worker, and telemarketer. (Tr. at 235-236.)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant

work. Id. § 404.1520(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. § 404.1520(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

**Summary of ALJ's Decision**

In this case, the ALJ found that Claimant met the insured worker requirements of the Social Security Act through December 31, 2018. (Tr. at 15, Finding No. 1.) At step one, however, the ALJ found Claimant had engaged in substantial gainful activity since September 1, 2012. (Id., Finding No. 2.) Because there had been no continuous 12-month period during which Claimant had not engaged in substantial gainful activity, the ALJ determined Claimant had not been under a disability from September 26, 2012 through the date of the decision. (Tr. at 17, Finding Nos. 3 and 4.)

**Claimant's Challenge to the Commissioner's Decision**

Claimant's sole issue on appeal is whether the ALJ's decision is supported by substantial evidence at step one when he found that Claimant engaged in substantial gainful activity during the relevant period. (Document No. 12 at 5.) Claimant argues that the probative evidence showed that his work was subsidized pursuant to SSR 83-33(A)(1), and the ALJ failed to subtract the value

of Claimant's subsidized earnings from his gross earnings prior to his determination that his work constituted substantial gainful activity. (Id. at 5-7.) It is notable that the ALJ estimated Claimant worked 10 hours per week, and that the ALJ noted Claimant was paid half of what the former full time pastor was paid, but he only worked about 25% of a normal full time workload. (Id. at 6.) Claimant asks this Court to reverse and remand this matter back to the Commissioner to correct this error. (Id. at 7.)

In response, the Commissioner contends that the ALJ properly examined the evidence that supported his step one finding: a letter from Claimant's employer did not support a finding that his work was not at substantial gainful activity levels. (Document No. 13 at 5.) Claimant earned $1900 per month for two and a half years through the date of the administrative hearing, which was above the threshold for substantial gainful activity. (Id. at 6.) The ALJ did not rely upon the rebuttable presumption that his work activity was above this threshold and reviewed the evidence detailing the particulars of Claimant's work as a part-time pastor. (Id. at 6-7.) The ALJ considered the evidence whether Claimant's earnings were a subsidy under SSR 83-33, and found that his earnings were not subsidized, but were consistent with his reduced role in contrast to the pay received by the former full-time pastor. (Id. at 8.) The Commissioner argues that the final decision is supported by substantial evidence and asks this Court to affirm. (Id. at 9.)

**The Relevant Evidence of Record**[2]

<u>Claimant's Testimony at the Administrative Hearing:</u>

---

[2] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings. As noted from the issue on appeal, the gravamen of the evidence concerns Claimant's testimony and his employer's letter regarding his employment during the relevant period.

Claimant testified that he had been a pastor for eight years. (Tr. at 52.) For two and a half years before the hearing, Claimant worked as a part-time pastor for an 80-100 person congregation and was paid $1,900 a month; this included a salary of $900 per month and a $1000 temporary stipend for expenses. (Tr. at 34-35, 54.)

Claimant explained that his duties included providing sermons during two Sunday services and teaching on Wednesday evenings. (Tr. at 41.) In all, his preparation time for his two sermons and Wednesday class took five and a half hours per week. (Tr. at 54.) His two Sunday sermons lasted about 20-30 minutes each. (Tr. at 52.) On Wednesdays, he has a prayer group he described as a meeting where everyone is sitting and having a discussion, and after prayer requests are taken, his "teaching aspect [lasted] probably 25 minutes." (Id.) Part of Claimant's duties was also to visit sick parishioners in the hospital, but had not been able to do that for a year. (Tr. at 41.) Instead, he called them on the phone, but they understand that he is unable to see them in person. (Id.) Claimant had some clerical responsibilities for the church, but he had "people in place" to handle the financial aspects of running the church, but they would bring things to his attention as needed. (Tr. at 42.)

Evidence Concerning Employer's Accommodations:

At the close of the administrative hearing, the ALJ requested that Claimant provide a detailed statement concerning the accommodations his church made for his position as pastor. (Tr. at 60.)

On September 8, 2015, Claimant's employer, the Treasurer/Deacon and Clerk of the Marmet First Baptist Church ("Marmet") wrote a letter explaining that Claimant was a "part-time" Pastor. (Tr. at 314.) Marmet advised that Claimant's duties are limited to conducting Sunday

6

morning and evening services as well as a Wednesday evening bible study. (Id.) Claimant's monthly compensation was approximately $950.00 with a $950.00 housing allowance. (Id.) Marmet's former "full-time" pastor received $3,750.00 per month including housing; he was expected to conduct three services a week and required to have regular office hours and do weekly visitation to homes, hospitals, and nursing homes, and was basically on call 24 hours a day. (Id.)

"Often a Deacon will open and close a service to help [Claimant] when he's not feeling well." (Id.) At times, Claimant had other Preachers or Deacons to have the full service if he had health issues. (Id.) Marmet was aware of Claimant's physical limitations, but "decided that the quality of his ministry outweighed his physical limitations." (Id.)

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists,

the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

The primary question presented in this case is whether Claimant's employment as a part-time pastor constitutes substantial gainful activity. If a claimant is performing substantial gainful activity, the Commissioner will find that he is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). Specifically, if a claimant is working and that work is substantial gainful activity, the Commissioner will find that he is not disabled regardless of his medical condition or his age, education, and work experience. Id. § 404.1520(b).

Under the Regulations, substantial gainful activity is defined as work activity that is both substantial and gainful. Id. § 404.1572. "Substantial" work is work activity that involves doing significant physical or mental activities. Id. § 404.1572(a). Work activity may be "substantial" even on a part-time basis or if the individual does less, is paid less, or has less responsibility than when he worked before. Id. Work activity is "gainful" if it is the kind of work that is usually done for pay or profit, whether or not a profit is realized. Id. § 404.1572(b). Generally, earnings derived from work are the "primary consideration" in determining whether a claimant engaged in substantial gainful activity. Id. § 404.1574(a)(l). To assist in this analysis, the Regulations contain earnings guidelines that establish, for every year, an average monthly earnings amount that is considered substantial gainful activity. Id. § 404.1574(b)(2). If a claimant's earnings exceed the guidelines, he is presumed to be engaged in substantial gainful activity, although that presumption can be rebutted. Id.; Payne v. Sullivan, 946 F.2d 1081, 1083 (4th Cir. 1991).

Pursuant to Section 404.1574(a)(2), the Commissioner will only consider the amounts of wages a claimant "earns", that is, income derived not directly related to the claimant's activity is

not considered. If a claimant's "earnings are being subsidized, we do not consider the amount of the subsidy[.]" Id. "We consider your work to be subsidized if the true value of your work, when compared with the same or similar work done by unimpaired persons, is less than the actual amount of earnings paid to you for your work." Id. Social Security Ruling 83-33 defines subsidies where "[a]n employer may, because of a benevolent attitude toward a handicapped individual, subsidize the employee's earnings by paying more in wages than the reasonable value of the actual services performed." SSR 83-33, 1983 WL 31255, at *3 (1983).

In this case, the ALJ noted Claimant's testimony that he had a heart attack in September 2012, returned to work in a lighter duty capacity, but suffered another heart attack in January 2013; Claimant also had a motor vehicle accident later that same month and stopped working. (Tr. at 16.) Though Claimant did not return to his previous employment as a heavy equipment operator, he continued to work as a part-time pastor to date. (Id.) After considering Claimant's testimony, *supra*, the ALJ estimated Claimant spent 10 hours a week performing his duties as a pastor, which included his services calling sick and homebound parishioners; the ALJ determined Claimant's church related services were "significant." (Id.)

With respect to Claimant's earnings as a pastor, the ALJ considered Claimant's testimony as well as the evidence from Marmet, the letter from the church Treasurer/Deacon and Clerk. (Id.) The ALJ found that Claimant's earnings for his services as a pastor were "substantial." (Id.) Though sympathetic to Claimant's limitations from his medical conditions, the ALJ noted that under Section 404.1574(a)(3) and SSR 83-33, the evidence was "insufficient" to support a characterization of the church's "payments for services rendered as something more than the reasonable value of the actual services performed." (Tr. at 16-17.) The ALJ stated

> In comparing the time, energy, skills, and responsibility involved in the claimant's services with the same elements involved in the performance of the same or similar work by unimpaired individuals in the community and estimating the proportionate value of the claimant's services according to the pay scale for such work, the undersigned finds the evidence unpersuasive.

(Tr. at 17.) The ALJ noted that the church's former full-time pastor was paid $3,750 per month and that Claimant is receiving approximately half that amount, as "consistent with his reduced role." (Id.) Further, the ALJ found that "the record is absent" to substantiate Claimant's impairment-related work expenses would be deducted from his income that would reduce his levels of substantial gainful activity, in order to offset his income levels. (Id.)

Another question in this case is whether this statement from Marmet can be characterized as a "subsidy" under the pertinent Ruling:

> As a congregation we knew that Rev. Burnside had physical limitations but we decided that the quality of his ministry outweighed his physical limitations. Rev Tom also at times has had other Preachers and or Deacons to have the full service due to health issues.

(Tr. at 314.)

SSR 83-33 provides further guidance in determining the amount of a subsidy:

> *In most instances, the amount of a subsidy can be ascertained by comparing the time, energy, skills, and responsibility involved in the individual's services with the same elements involved in the performance of the same or similar work by unimpaired individuals in the community and estimating the proportionate value of the individual's services according to the prevailing pay scale for such work.*
>
> When precise monetary evaluation is not feasible, it may be possible to determine the approximate extent of a subsidy on the basis of gross indications of a lack of productivity; for example, when unusual supervision or assistance is required in the performance of simple tasks, or the employee is extremely slow, inefficient or otherwise unproductive.

Id. at *3-4. (emphasis added)

In addition, the Ruling states that the following circumstances indicate the strong possibility of a subsidy:

(1) The employment is "sheltered;" or

(2) Childhood disability is involved; or

(3) Mental impairment is involved; or

(4) There appears to be a marked discrepancy between the amount of pay and the value of the services; or

(5) The employer, employee, or other interested party alleges that the employee does not fully earn his or her pay (e.g., the employee receives unusual help from others in doing the work); or

(6) The nature and severity of the impairment indicate that the employee receives unusual help from others in doing the work; or

(7) The employee is involved in a government-sponsored job training and an employment program.

Id. at *4.

Based on the representations made by Marmet, there appears to be a "marked discrepancy" in Claimant's payment as a part-time pastor versus that of the former full-time pastor for the value of their services: as demonstrated by the evidence of record, Claimant worked approximately 10 hours per week, paid half of what the former full time pastor was paid, an individual who was "basically on call 24 hours a day." In addition to the marked discrepancy in pay, Marmet indicated that Claimant received "unusual help" from others in doing his work insofar as other Preachers or Deacons would "often open and close a service" and "at times" have the full service if Claimant had health issues. Further, despite Claimant's physical limitations, Marmet "decided that the

quality of his ministry" was worth it, indicative of a "benevolent attitude" pursuant to the Agency's own rule. In short, the ALJ's analysis of Claimant's income[3] deviates from the pertinent legal authority.

Accordingly, the undersigned **FINDS** the ALJ's analysis and conclusion that Claimant's substantial gainful activity during the relevant period was not a subsidy unsupported by the substantial evidence, and his conclusion finding Claimant not disabled unsupported by the substantial evidence.

**Recommendations for Disposition**

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **GRANT** the Claimant's request for reversal and remand (Document No. 12.), **DENY** the Defendant's request to affirm the decision below (Document No. 13.), **REVERSE** the final decision of the Commissioner, and **REMAND** this matter back to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further administrative proceedings in order for the ALJ to properly consider the evidence of record in determining whether Claimant's income rose to substantial gainful activity levels.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of

---

[3] Though understandably for Social Security purposes, the definition of "income" differs from that of the Internal Revenue Code, however, it bears a mention that gross income does not include the rental value of a home or a rental allowance paid to a minister of the gospel as part of his compensation. See 26 U.S.C. § 107.

objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: October 30, 2017.

Omar J. Aboulhosn
United States Magistrate Judge

13